# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8675 | **DATE** | 3/26/2004 |
| **CASE TITLE** | Nick Episcopo vs. General Motors Corporation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

## DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion to strike (38-1) is granted. Defendant's motion for summary judgment on all claims (29-1) is granted. There is no genuine issue of material fact on plaintiff's claims against defendant under 42 U.S.C. § 1981, Title VII and the ADA. Court enters judgment in favor of defendant and against plaintiff. This is a final and appealable order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | MAR 29 2004 | | |
| | Notified counsel by telephone. | | date docketed | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | | |
| ✓ | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | | | |
| | | | U.S. DISTRICT COURT | date mailed notice | |
| CW | courtroom deputy's initials | | CLERK | | |
| | | | 2004 MAR 26 PM 4: 33 | | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|  |  |  |
|---|---|---|
| NICK EPISCOPO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 02 C 8675 |
| | ) | Paul E. Plunkett, Senior Judge |
| GENERAL MOTORS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

DOCKETED
MAR 2 9 2004

## MEMORANDUM OPINION AND ORDER

Nick Episcopo ("Episcopo") has sued General Motors Corporation ("GM") for alleged violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA") and 42 U.S.C. § 1981, alleging hostile work environment, disparate treatment, retaliation and failure to accommodate a disability. GM has filed a Federal Rule of Civil Procedure ("Rule") 56(c) motion for summary judgment on these claims. For the reasons set forth below, the motion is granted.

## Facts

Unless otherwise noted, the following facts are either undisputed or deemed admitted because Episcopo failed to comply with Local Rule 56.1 ("LR 56.1"), a local rule which this Court enforces.[1]

---

[1] The local rule requires that disagreement with any of GM's LR 56.1(a)(3) statements of material facts ("Def.'s LR 56.1(a)") be indicated with specific reference to the record. *See* N.D. Ill. R. 56.1(b)(3)(A). In certain cases, Episcopo failed to cite to the record altogether. Other times, his citations did not support his contrary contentions or he failed to legitimately refute the statement of fact, offering only an explanation of a tangential nature. *See, e.g.,* Episcopo's LR 56.1(b)(3)(A) Response ("Pl.'s LR 56.1(b)(3)(A)") ¶¶ 10, 14, 20, 27, 32, 44, 57, 69. When presenting his LR 56.1(b)(3)(B) statements of additional facts ("Pl.'s LR 56.1(b)(3)(B)"), Episcopo often failed to support his assertions. In addition, Episcopo attempts to present facts through his memorandum of law. We expect the parties to

*See Smith v. City of Chicago,* 2002 WL 1770532 (N.D. Ill. Aug. 1, 2002). Episcopo is a Caucasian male of Italian descent. (Def.'s LR 56.1(a) ¶ 1.) He was employed at GM's Electro-Motive Division ("EMD") facility in McCook, Illinois from January 8, 1969 until he retired on January 1, 2003. (*Id.* ¶¶ 1, 13.) Gerry Hanley was Episcopo's supervisor from March 2000 until May 2001. (*Id.* ¶ 7(2nd).)[2] Greg Monczynski was an hourly worker at the EMD facility and, until Episcopo's retirement, Episcopo's coworker. (*Id.* ¶ 46.)

In September 1997, Episcopo fractured his left wrist at work. (*Id.* ¶ 5.) He had surgery on his left rotator cuff in April 1999 and surgery on his right rotator cuff in January 2000. (*Id.*) Episcopo attributes both surgeries to the 1997 accident. (*Id.*) When he returned to work after surgery, Episcopo believed his right shoulder had not healed. (Pl.'s LR 56.1(b)(3)(B) ¶ 3.) Episcopo believes he is disabled because of his shoulder. (Def.'s LR 56.1(a) ¶ 6.) He believes he cannot lift more than ten pounds and cannot lift objects above chest level. (*Id.*) He also believes that he could perform seventy percent of his job duties at GM with a ten-pound lifting restriction. (*Id.* ¶ 7.) Episcopo is able to do yard work at his home, including cutting the grass and tree branches. (*Id.* ¶ 8.) He is also able to bathe and dress himself and does not have any in-home health care. (*Id.* ¶ 9.) Episcopo walks and stretches for exercise. (*Id.* ¶ 10.) He can no longer do painting, carpentry, building, plumbing and other "heavy work" at his home because of his shoulder unless he takes pain pills, in which case he is able to perform these tasks. (*Id.* ¶ 11.) Episcopo can drive his 2002 Chevy truck and his wife's Buick LeSabre, but sometimes has difficulty if he keeps his arm on the steering wheel

---

abide by LR 56.1 and will only consider facts that are presented in accordance with that rule. *See Newsome v. James,* 2000 WL 528475 (N.D. Ill. Apr. 26, 2000).

[2] GM misnumbered its LR 56.1(a) statements, resulting in two sets of statements numbered 7-13. The second set of statements is referenced by the notation "2nd".

too long.[3] (*Id.* ¶ 12.) He went on medical leave in September 2002 and retired on January 1, 2003. (*Id.* ¶ 13.)

GM has a program called Accommodating Dis-abled Persons in Transition ("ADAPT"). The program is used to place employees with medical restrictions in positions which accommodate the restrictions. (*Id.* ¶ 11(2nd).) Under the ADAPT program, GM's medical department evaluates the employee to determine the appropriate restriction, which is documented in a Medical Notice of Restriction ("Notice of Restriction"). (*Id.* ¶12(2nd).) The employee presents the Notice of Restriction to his supervisor, who determines whether there is an appropriate position for the employee within the employee's regularly assigned department. (*Id.* ¶ 13.) If the supervisor cannot place the employee, the ADAPT committee determines if additional accommodations would enable the employee to perform his assigned job, or whether another job at GM is available. (*Id.* ¶ 14.) If the ADAPT committee cannot place an employee, then the employee is sent home until his or her medical condition improves. (*Id.* ¶ 15.) GM asserts that the medical department's finding with respect to a medical restriction is binding on the employee's supervisor; Episcopo denies that allegation, asserting instead that the medical department's findings are adhered to as a matter of custom and practice. (*Id.* ¶ 18; Pl.'s LR 56.1(b)(3)(A) ¶ 18 Response; Hanley Dep. at 49.)

If an employee disagrees with the medical department's restriction, the collective bargaining agreement provides that an employee can request an independent medical examination ("IME"). (Def.'s LR 56.1(a) ¶ 16.) Under paragraph 43(b) of the agreement ("Paragraph 43(b)"), GM and the

---

[3] In some cases, GM's LR 56.1 statements are taken out of context and thus do not represent what was communicated during the deposition. *See, e.g.,* Def.'s LR 56.1(a) ¶¶ 9(2nd), 13, 26, 37, 51 and 60. Some of this we attribute to the fact that English is not Episcopo's first language and so his testimony is not always precise and succinct. We are required to view the record in the light most favorable to the non-moving party. *Smith on behalf of Smith v. Severn,* 129 F.3d 419, 425 (7th Cir. 1997).

union mutually select an outside physician to examine the employee. The outside physician's findings are binding on the parties. (*Id.* ¶ 17; Def.'s Ex. 5 at 34.)

On March 13, 2000, after returning to work from surgery on his right rotator cuff, Episcopo was issued a Notice of Restriction by Georgia Hood, a nurse in the medical department. (Def.'s LR 56.1(a) ¶ 19.) Under this Notice of Restriction, valid through March 31, 2000, Episcopo was to lift no more than ten pounds with his right hand or engage in overhead lifting. (*Id.*) Hanley could not find enough work for Episcopo in his department that fell under the ten-pound restriction. Episcopo returned to the medical department and saw Doctor Lacey, GM's plant physician. (*Id.* ¶ 20) Doctor Lacey issued a new Notice of Restriction, valid through March 31, 2000, that included a thirty-pound restriction and provided that Episcopo was to minimize repetitive use of, and not engage in overhead use of, his right arm. (*Id.*) Doctor Lacey determined that the thirty-pound restriction was appropriate because, based on clinical impressions, if Episcopo could lift ten pounds with his right hand, then he could lift thirty pounds using both hands. (*Id.* ¶ 21.) Hanley placed Episcopo in a regular job with this restriction. (*Id.* ¶ 22.)

On April 4, 2000, a nurse in the GM medical department issued another Notice of Restriction, valid through April 25, 2000, and providing that Episcopo was not to lift more than ten pounds or engage in overhead lifting of his right arm. (*Id.* ¶ 23.) GM says Hanley was not able to find a position for Episcopo given these restrictions; Episcopo denies that no positions were available. (Episcopo Dep. at 73-76.)

On January 8, 2001, Episcopo filed a grievance alleging that GM's management and its medical department were refusing to "consider the recommended medical restrictions issued by [my] doctors." (Def.'s LR 56.1(a) ¶ 24; Def.'s Ex. 9.) GM investigated Episcopo's grievance. Hanley

and Doctor Lacey explained that Episcopo had no medical condition that prevented him from performing his job and that he could use a crane or ask other employees for assistance if he felt a job was too heavy for him. (Def.'s LR 56.1(a) ¶ 25.) GM asserts that Episcopo never requested an IME under Paragraph 43(b), but the grievance documentation indicates that the union requested an IME be sought, if necessary. (Id. ¶ 26; Def.'s Ex. 9.) Episcopo ultimately withdrew his grievance; he never filed another grievance regarding medical restrictions. (Def.'s LR 56.1(a) ¶ 27.)

The ADAPT committee, comprised of Doctor Lacey; Bob Hill, an hourly tool and die skilled tradesman; Jim Buskus, the union health and safety representative; and "someone from hourly personnel," met between ten and twenty times on Episcopo's case and examined Episcopo's work area. (Id. ¶ 28; Lacey Dep. at 26.) GM installed a special crane in Episcopo's work area to help him lift parts, although Episcopo asserts the crane was installed as a result of several complaints from other employees. (Def.'s LR 56.1(a) ¶ 29.)

Episcopo claims that Hanley and Doctor Lacey failed to accommodate his disability. (Id. ¶ 8(2nd).) According to Episcopo, Doctor Lacey failed to honor the work restrictions recommended by his family physicians, Doctors Vincenzo Bartolomeo and Guido Marra, and did so because of Hanley. (Id. ¶ 9(2nd).) Episcopo wanted a permanent ten-pound lifting restriction and a restriction on work done "over the chest." (Id.) Episcopo believes Hanley failed to accommodate his disability by assigning him work tasks that exceeded his weight restriction dozens of times. (Id. ¶ 10(2nd); Pl.'s LR 56.1(b)(3)(A) ¶ 22 Response.)

Episcopo claims that on one occasion, Hanley assigned him to lift an object estimated to weigh over eighty pounds. Episcopo refused to perform the job; Hanley did not discipline Episcopo. (Def.'s LR 56.1(a) ¶ 36.) On December 11, 2000, while there were no medical restrictions in place,

Hanley asked Episcopo to operate the jig bore and the gray planer machines, two of the three machines (the third being a jig mill) in his department Episcopo believed he could not operate. (*Id.* ¶¶ 33, 34.) Episcopo told Hanley that he did not feel comfortable operating those machines, and Hanley agreed not to have Episcopo operate them. (*Id.* ¶ 34.) Episcopo claims that on December 28, 2000, when no medical restrictions were in place, Hanley gave Bill Rual, a coworker, a small part to work on and assigned Episcopo a larger part. Hanley allowed Rual to help Episcopo with his assignment. (*Id.* ¶ 37.)

Episcopo remembers four other occasions where Hanley assigned him work that involved some heavy lifting. Once, he was assigned to perform a job on a 150 pound "shaper." He performed part of the job and asked other people to help him pick up and rotate the part. (*Id.* ¶ 38.) Another time, he was assigned a task that required him to lift fifty to sixty pounds above his chest. (*Id.* ¶ 39.) Still another time, Episcopo was given "heavy work" while Hanley allowed another worker, Bill Klein, to be idle because Klein was waiting on a part. (*Id.* ¶ 40.) Finally, Episcopo was assigned to work on a piece of bronze that Episcopo believed exceeded his work restrictions.[4] (*Id.* ¶ 41.) Hanley told other workers to help Episcopo if he needed help with a heavy job. (*Id.* ¶ 30.) If Episcopo felt he could not physically perform a task, he would either refuse to do it or have a coworker help him. (*Id.* ¶ 31.) Under the collective bargaining agreement, Hanley could have disciplined Episcopo for his refusal to perform certain tasks, but Hanley never disciplined Episcopo for this reason. (*Id.* ¶ 32.)

---

[4] Episcopo has not indicated when these tasks were assigned. We do not know if they were assigned when a Notice of Restriction was in effect.

Episcopo believes GM's personnel department has discriminated against him during his employment on the basis of his national origin, but he cannot identify any individual specifically in the personnel department who has discriminated against him. (*Id.* ¶ 44.) He was denied certain promotions during the 1970s and believes it was the result of discrimination. (*Id.* ¶ 82.) Episcopo believes Hanley, Monczynski and Al Sucha (an hourly coworker) created a hostile work environment because of his national origin. (*Id.* ¶ 46.) Episcopo believes Sucha is responsible for the hostile work environment because, from the late 1980s until the mid-1990s, Sucha would say "Burger King, Home of the Wop" in Episcopo's presence. (*Id.* ¶ 47.) Episcopo also claims that, during the 1980s, Sucha would make jokes about immigrants. (*Id.* ¶ 48.) Episcopo claims that in 1997 or 1998, Sucha said "All dagos on one side, and the Polish on the other side." This was the last time Sucha ever made a racial comment in Episcopo's presence. (*Id.* ¶ 49.)

In May 1995, after the Oklahoma City bombing, Hanley and three or four of Episcopo's coworkers were standing in a group. One of the individuals used the term "fucking displaced persons." (*Id.* ¶ 50.) GM claims that Hanley never heard anyone use the term "displaced persons," but his deposition testimony indicates that although he himself has used that term to refer to immigrants, he does not recall anyone at EMD using the term. (Hanley Dep. at 32-35.) After this incident, Episcopo believes Hanley was "out to get him." (Def.'s LR 56.1(a) ¶ 52.)

Episcopo believes that Hanley made the following false complaints to Paul Penkala, Episcopo's supervisor in 1998 or 1999: Episcopo swept garbage in the aisle; Episcopo would stay in the washroom too long; Episcopo had a coffee pot at his work station; Episcopo would place his toolbox or coat in places that would bother Hanley; and Episcopo ate lunch in Hanley's work area. (*Id.* ¶ 53.) Hanley asserts, however, that he made only one comment about Episcopo: Hanley asked

his supervisor at the time, Willie Carter, to have Penkala ask Episcopo not to eat his lunch in Hanley's department. (*Id.* ¶ 54.) Episcopo was never disciplined by Penkala because of Hanley's complaints. (*Id.* ¶ 55.) In fact, Episcopo was not disciplined during the last twenty-three years of his employment at GM. (*Id.*)

Episcopo claims that, in 2001, Penkala told him that Hanley wanted Episcopo to retire. (*Id.* ¶ 56.) He also claims that, in early 2001, Hanley told Episcopo that he (Hanley) did not know Episcopo's nationality – "a pizza maker or a pizza deliverer." (*Id.* ¶ 57.) George Smith, Episcopo's coworker, saw Episcopo and Hanley scream at each other during arguments. (*Id.* ¶ 58.) Hanley recalls raising his voice to Episcopo on June 13, 2000, when Episcopo made another employee stop work on a machine so Episcopo could finish a job. (*Id.* ¶ 59.) Hanley was upset because Episcopo could have used other available machines to complete his task; Episcopo denies the availability of other machines. (*Id.*) Episcopo believes Hanley had harsh words for immigrants and African-Americans, but not for "white Americans."[5] (*Id.* ¶ 60.)

Episcopo believes Hanley was "out to get him" because Hanley would not stop Monczynski's behavior toward Episcopo. (*Id.* ¶ 62.) Episcopo and Monczynski argued with each other frequently. (*Id.* ¶ 63.) They complained about each other to their union representative, Rick Robertson, on a regular basis in a manner described by Robertson as childish. (*Id.* ¶ 64.) Monczynski had arguments with all of the workers in the toolroom, including Hanley; Episcopo also argued with workers in the toolroom. (*Id.* ¶ 65.) Episcopo believes that, sometime after 1995, perhaps in 2000, Monczynski

---

[5] Episcopo's deposition testimony on the issue of Hanley's treatment of non-Caucasians is hard to decipher. However, we are required to draw all reasonable inferences in Episcopo's favor.

tried to hit him with his car.[6] (*Id.* ¶ 66.) Episcopo believes Tony Citro, a coworker, witnessed the incident but Citro denies having witnessed any such incident. (*Id.* ¶ 67.) Episcopo thinks that he was subject of discrimination because GM did not terminate Monczynski as a result of this incident where other employees who committed less serious misdeeds were threatened with termination. (*Id.* ¶¶ 68, 69.) Episcopo says Monczynski called him "wop" and "dago" between thirty and fifty times between 1995 and May 2001. (*Id.* ¶ 70.) Hanley never heard Monczynski call Episcopo these names. (*Id.* ¶ 71.) Episcopo has used the terms "wop" and "dago" himself. He has also used the term "Polak" and has told "Polak jokes" at work. (*Id.* ¶ 72.) Episcopo claims that on one occasion Monczynski asked him if Columbus Day was an Italian holiday. (*Id.* ¶ 73.)

On one occasion, after having returned from the bathroom, Episcopo found sunflower seeds in his work area. (*Id.* ¶ 74.) Episcopo believes Monczynski put the seeds there. Episcopo also thinks that Monczynski, while staring at Episcopo, would raise his eyeglasses with his middle finger and lay out his work glove with the middle finger sticking out towards Episcopo, making an obscene gesture. (*Id.* ¶ 75.) Episcopo claims that Monczynski had a swastika sign on a box of paper towels Monczynski kept with his tool box. Smith told Monczynski to remove the swastika and Monczynski did. (*Id.* ¶76.) Hanley never saw the swastika, nor did several of Episcopo's coworkers. (*Id.* ¶ 77.) On one occasion, Episcopo and Monczynski almost got into a physical altercation. (*Id.* ¶ 78.) They were yelling at each other, and Smith told them to stop because they could lose their jobs. (*Id.*) Another time, Episcopo left his stool in what Monczynski thought was the work aisle and, according to Episcopo, Monczynski kicked the chair out of the way; GM believes Monczynski moved the stool

---

[6] GM asserts that the incident occurred in 1995. Episcopo's testimony as to the date is ambiguous; he states that "it can be 2000;" that it did not occur in the 1990s but that "we talk about it after 1995." Episcopo Dep. at 134-36. We are required to view all evidence in favor of the non-moving party.

in order to get by. (*Id.* ¶79.) Robert Miller (the general foreman), Hanley, Robertson and Monczynski had a meeting to discuss the problems Monczynski and Episcopo were having with one another. Both men were told to stop aggravating one another and "act like adults." (*Id.* ¶ 80; Hanley Dep. at 29.) Episcopo's problems with Monczynski stopped after Hanley retired. (Def.'s LR 56.1(a) ¶ 81.)

GM has policies in place that detail expected behavior from employees, including specific provisions prohibiting discrimination and harassment. The discrimination policies contain a complaint and reporting provision. (*Id.* ¶ 83.) The collective bargaining agreement between GM and Episcopo's union reiterates GM's policies against discrimination and allows union employees to make complaints of discrimination by filing a grievance. (*Id.* ¶ 84.) Episcopo was aware of GM's policies and understood that if he believed he had been discriminated against or harassed, the reporting procedure required him to file a grievance through his union representative. (*Id.* ¶ 85.) Episcopo filed a grievance in 1977 alleging national origin discrimination. (*Id.* ¶ 86.) After 1977, Episcopo complained to his union representative that he felt he had been discriminated against, but he never filed a grievance alleging discrimination.[7] (*Id.*) Episcopo told Rex Blackwell, plant manager, that he needed to talk to him about some problems. Episcopo did not tell Blackwell the nature of the problems. (*Id.* ¶ 87.) Episcopo told Superintendent Ron Sidebottom, Miller and Penkala that he had a problem with Hanley. (*Id.* ¶ 88.) Episcopo did not share the nature of the problem with these people. (*Id.*)

---

[7] Episcopo asserts that he asked his union representative more than once to file a grievance on his behalf but the union representative would not. (Episcopo Dep. at 177-78.) A union has a duty of fair representation to its members which includes advancing grievances on their behalf. *See President v. Illinois Bell Tel. Co.*, 865 F. Supp. 1279, 1290-91 (N.D. Ill. 1994.) GM, however, cannot be responsible for the union's behavior toward Episcopo.

Episcopo filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 2, 2000. (*Id.* ¶ 89; Def.'s Ex. 17.) Episcopo believes Hanley retaliated against him because of the EEOC charge by giving him dirty looks, screaming at him in an attempt to start an argument and harassing him. (Def.'s LR 56.1(a) ¶ 90.) Episcopo identified three instances where Hanley allegedly attempted to start an argument with him.[8] (*Id.* ¶ 91.) On one occasion, Episcopo claims Hanley screamed at him because he was not working. He explained to Hanley that he was not working because the machines were being used by others. (*Id.*) Episcopo claims that on Hanley's last day of work in May 2001, Hanley threatened to call the union after Episcopo refused to perform a job Episcopo believed was too heavy for him. (*Id.* ¶ 92.) Episcopo had no medical restrictions in place at that time. (*Id.*) Episcopo claims that on December 11, 2000, Hanley tried to start an argument with him by asking him to train on the jig bore and gray planer machines. (*Id.* ¶ 93.) Episcopo believed he was not able to operate those machines with his medical restrictions. (*Id.*) In fact, no GM-issued medical restrictions were in place on that date. (*Id.* ¶ 94.) When Episcopo told Hanley he did not feel comfortable operating those machines, Hanley agreed that Episcopo did not have to operate them. (*Id.*) Episcopo claims Hanley would check on him when he went to the restroom and would sometimes follow Episcopo there. (*Id.* ¶ 95.) Episcopo believes that supervisors have the right to check whether their employees are working. (*Id.* ¶ 96.)

---

[8] Episcopo denies that he only identified three instances, stating "plaintiff's deposition is replete with a description of ongoing, pervasive harassment." This denial does not comply with LR 56.1. We are not required to scour the record to make out a party's case. *See Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354 n.4 (7th Cir. 2002).

## The Legal Standard

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

## Discussion

Episcopo has filed a motion to strike a document never produced during discovery. We address this motion before we rule on the merits of GM's motion for summary judgment. With its reply memorandum in support of the summary judgment motion, GM submitted a copy of a grievance jacket cover sheet[9] ("Exhibit A"). The "date filed" section of the cover sheet indicates that it was created on January 8, 2001. The cover sheet also contains an annotation, with the date "10-29-03" next to it, which states: "Although it was management's intent to send the employee to an IMO [independent medical examination], the employee retired effective 1-1-03." GM asserts that Exhibit A supports its position that Episcopo withdrew his January 8, 2001 grievance (pertaining to

---

[9] These are cover sheets to file folders that are created when an employee files a grievance. (Robertson Dep. at 37-38.)

GM's failure to honor his medical restrictions) and never requested an independent medical exam. (Def.'s Response to Pl.'s LR 56.1(b)(3)(A) ¶ 26.)

Episcopo claims that Exhibit A was not produced during discovery and that we should strike it from the record. GM does not dispute that the document was not produced during discovery, offering as an explanation that production at that time was impossible because the document was created after discovery closed on September 2, 2003. GM's position is hard to understand. It claims that it "produced all documents regarding plaintiff's January 8, 2001 grievance" and refers to documents with bates stamp numbers GM 102-130. (Opp'n to Mot. to Strike at 1.) However, in comparing Exhibit A with another grievance jacket cover sheet produced during discovery, *see* Ex. 21 to Robertson Dep. at 37-38, it seems clear that this particular cover sheet was created on January 8, 2001. Moreover, GM's assertion that the annotations on Exhibit A reflect "only the fact that lead counsel for GM faxed this document to local counsel for GM on the date that GM filed its reply brief . . . ." is hard to appreciate. The date of the annotation is October 29, 2003. The Court's electronic docket indicates that GM filed its reply brief in support of its motion for summary judgment on December 22, 2003. We do not see any reference to December 22, 2003, on Exhibit A. October 29 is, according to the docket, the date GM filed its motion for summary judgment.

GM also argues that there is no duty under Rule 26 to supplement disclosures or discovery responses after discovery has closed. We disagree. Although Rule 26 does not explicitly provide for supplementation of disclosures and responses after the close of discovery, we think the language of Rule 26(e)(2) is broad enough to require supplemental disclosures under certain circumstances, regardless of whether discovery has closed, and is consistent with the spirit behind the discovery rules, which is to promote a liberal discovery process "in an effort to narrow the issues for trial and

to prevent unfair surprise." *Scranton Gillette Communications, Inc. v. Dannhausen*, 1998 WL 566668, at *1 (N.D. Ill. Aug. 26, 1998). *See also* Fed. R. Civ. P. 26 Advisory Committee Notes, 1993 Amendments, Subdivision (e).

We find that, because GM failed to produce Exhibit A during the discovery process, we will not consider it in deciding GM's motion for summary judgment.[10] Episcopo's motion to strike Exhibit A is granted.

## 1. Claim Under 42 U.S.C. § 1981

GM seeks to dismiss Episcopo's claims under section 1981 on the basis that section 1981 does not address national origin discrimination. GM is correct. *See Hussein v. Oshkosh Motor Truck Co.*, 816 F.2d 348, 352 (7th Cir. 1987) (citing *Anooya v. Hilton Hotels Corp.*, 733 F.2d 48, 50 (7th Cir. 1984)). A claim of discrimination on the basis of national origin may proceed under section 1981 if it is clear that the discrimination allegedly occurred because of plaintiff's membership in a group "distinct from white citizens as a matter of race or color." *Id.* (quoting *Doe v. St. Joseph's Hosp.*, 788 F.2d 411, 418 (7th Cir. 1986)). That rule does not apply in this case. Episcopo is Caucasian. In his complaint, Episcopo alleges discrimination by GM because "he was born in Italy" and distinguishes the treatment he received from the treatment received by "American-born persons." (Compl. ¶¶ 46-48.) He does not assert or suggest that the discrimination resulted from his being a member of a different race or color. Episcopo's reliance on *Von Zuckerstein v. Argonne Nat'l Lab.*, 760 F. Supp. 1310 (N.D. Ill. 1991) is misplaced. In that case, the court

---

[10] Our decision on this matter does not change the fact that GM's LR 56.1(a) ¶ 27 (which states that Episcopo withdrew this grievance) was not properly denied by Episcopo and is therefore deemed admitted.

-14-

recognized a cognizable claim under section 1981 because it found that the plaintiffs had alleged discrimination on the basis of their race, color and ethnicity and not solely on their national origin. *Id.* at 1313. We grant GM's motion for summary judgment with respect to claims made under 42 U.S.C. § 1981.[11]


## 2. Claim Under the ADA for Failure to Accommodate a Disability

In order to survive a motion for summary judgment on a failure to accommodate claim under the ADA, Episcopo must show that: (1) he was (or is) disabled as defined by the ADA; (2) GM was aware of his disability; and (3) he was (or is) a qualified individual who, with or without reasonable accommodation, can perform the essential functions of the position he held with GM. *Feldman v. American Mem'l Life Ins. Co.*, 196 F.3d 783, 789 (7th Cir. 1999).

Episcopo suggests that because he is not claiming disability discrimination, whether he is disabled is irrelevant. (Response at 15.) We assume he means that because he is not making a disparate treatment claim, the *McDonnell Douglas*[12] burden-shifting analysis is inapplicable. But Episcopo is claiming failure to accommodate under the ADA, a form of disability discrimination, and to be successful in this claim, Episcopo must establish that he was a qualified individual with a disability. *Sieberns v. Wal-Mart Stores, Inc.*, 125 F.3d 1019, 1021-22 (7th Cir. 1997). To defeat GM's motion for summary judgment, Episcopo must present evidence which would allow a reasonable jury to find that he falls within the ADA's definition of disability. This he cannot do.

---

[11] Episcopo provides no legal authority for his position that, because of a coding error where GM classified Episcopo as Hispanic, GM is now estopped from arguing for dismissal of the section 1981 claims.

[12] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

A person is disabled within the meaning of the ADA if he has: (1) "a physical or mental impairment that substantially limits one or more of the [individual's] major life activities"; (2) "a record of such an impairment"; or (3) is "regarded as having such an impairment." 42 U.S.C. § 12102(2) (1995); *see also* 29 C.F.R. 1630.2(g). The definition of a "physical or mental impairment" includes "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h)(1).

A plaintiff's disability must also substantially affect a major life activity. Major life activities include: "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). A temporary disability is not covered by the ADA. *See Matthews v. Commonwealth Edison Co.*, 128 F.3d 1194, 1197 (7th Cir. 1997) ("the temporarily disabled are not protected by the [ADA]"). "The impairment's impact must also be permanent or long term." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002).

Episcopo does not specifically identify a major life activity he cannot perform, but the focus of his response brief suggests that he is arguing he is substantially limited in his ability to work.

In the words of the Supreme Court:

To be substantially limited in the major life activity of working, . . . one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

*Sutton v. United Airlines, Inc.*, 527 U.S. 471, 492 (1999). Episcopo has offered no evidence that he is precluded from working in a class of jobs or a broad range of jobs in various classes, *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 525 (7th Cir. 1996), and in fact does not even make that argument. He asserts only that he could not work on the largest machines at GM which require overhead lifting, which is about thirty of the jobs. (Response at 15.)

An impairment is considered a "disability" when it constitutes a significant barrier to employment and substantially limits employment generally. *Byrne v. Board of Educ.*, 979 F.2d 560, 565 (7th Cir. 1992) (discussing physical impairment under Rehabilitation Act). An impairment does not become a "disability" under the ADA simply because it affects one's ability to perform a particular job for a particular employer. *Duffin v. Federal Express Corp.*, 1997 WL 208428, at *3 (N.D. Ill. Apr. 22, 1997) (discussing lifting restrictions and citing cases where plaintiffs with lifting restrictions were not afforded protection under the ADA). Episcopo must show that a genuine issue of material fact exists that his impairment limits employment generally, which he has not done. In fact, Episcopo has not even shown that his impairment impacted his ability to perform his job at GM. *Cf. White v. Boehringer Mannheim Corp.*, 28 F. Supp. 2d 527, 537 (S.D. Ind. 1998) (discussing relevance of plaintiff's ability to perform his current job satisfactorily and ability to perform other employment). He was not required to work on the machines that required heavy lifting overhead, and when he did so, he was able to get help from coworkers. He was not disciplined or reprimanded and has presented no evidence that he suffered in the terms of his employment (for example, pay raises or desirable shifts) as a result of his inability to perform certain tasks.

Because Episcopo has not satisfied an essential element of establishing a case under the ADA, we need not explore the remaining facets of his failure to accommodate claim. *See Amadio v. Ford Motor Co.*, 238 F.3d 919, 924 (7th Cir. 2001) (a claim under the ADA fails if a plaintiff fails to prove any of the elements of a *prima facie* case). GM's motion for summary judgment on this claim is granted.

### 3. Claims Under Title VII

Title VII prohibits employment discrimination on the basis of race, color, religion, sex and national origin. 42 U.S.C.A. § 2000e-2 (2003). In Illinois, an individual must initiate a national origin discrimination claim by filing an EEOC charge within 300 days of the alleged discrimination. *See Hall v. Bodine Elec. Co.*, 276 F.3d 345, 352 (7th Cir. 2002). Episcopo filed his charge on November 2, 2000, so under the general rule, conduct that occurred before January 2000 is time-barred.[13]

### A. Claim For Hostile Work Environment Based on National Origin

"In order to survive summary judgment on a hostile work environment claim, a plaintiff must present evidence that would establish that the allegedly hostile conduct was so severe or pervasive as to create an abusive working environment in violation of Title VII." *Russell v. Board of Trustees*,

---

[13] Episcopo argues that conduct that occurred before this time is relevant because "it was frequent, continuous, and intense" and also because it is otherwise probative of the issue. This argument is unpersuasive. Each incident is a separate actionable act and Episcopo has not shown that all of the acts should be linked under the "continuing violation" doctrine. *See Hall*, 276 F.3d at 353 (explaining circumstances under which continuing violation doctrine allows court to consider acts that occurred during the pre-limitations period).

243 F.3d 336, 342-43 (7th Cir. 2001). Our analysis has both an objective and a subjective element – conduct covered by Title VII is conduct that "a reasonable person would find . . . hostile and which the victim [himself] . . . sees as abusive." *Filipovic v. K&R Express Sys., Inc.*, 176 F.3d 390, 398 (7th Cir. 1999) (quoting *Ngeunjuntr v. Metro. Life Ins. Co.*, 146 F.3d 464, 467 (7th Cir. 1998)). In determining whether conduct is actionable, we look at all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating; or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Adusumilli v. City of Chicago*, 164 F.3d 353, 361 (7th Cir. 1998) (internal quotation marks and citation omitted). We must first conclude that Episcopo has stated a valid claim before we consider whether GM may be liable as an employer. *See Mason v. Southern Ill. Univ. at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000) (employer "essentially strictly liable" if supervisor created the hostile work environment, but liable for coworker's actions only if employer negligent in either discovering or remedying harassment).

Reading the record in the light most favorable to Episcopo, the conduct he complains of fails to meet the standard stated above. Because many of the events Episcopo refers to in his response brief occurred prior to January 2000, such as Sucha's comments, the "displaced persons" comment, Episcopo's failure to be promoted in the 1970s and Hanley's complaints to Penkala, we do not consider them in our discussion. The events that occurred after January 2000 were not frequent or severe enough to constitute a hostile work environment. *See Russell*, 243 F.3d at 343-44 (discussing comments and conduct of male supervisor toward female subordinate that, though boorish and offensive, did not constitute actionable conduct). *See also Baskerville v. Culligan Int'l Co.*, 50 F.3d

428, 430 (7th Cir. 1995) (numerous "vulgar" incidents that took place over seven months were not sexual harassment).

As for Hanley's conduct, he made one comment that goes to Episcopo's national origin (the "pizza maker" comment) and although entirely inappropriate, it was isolated. The one instance, on June 13, 2000, where Hanley specifically yelled at Episcopo does not constitute frequent behavior and the general fact that Hanley and Episcopo yelled at each other does not support an inference that Episcopo was subject to a hostile work environment because of his national origin. *See Patton v. Indianapolis Public Sch. Bd.*, 276 F.3d 334, 339 (7th Cir. 2002) (rude, arrogant and boorish behavior at work does not create Title VII claim as long as hostility not based on protected characteristic). Similarly, Hanley's comment to Penkala that he wanted Episcopo to retire is insignificant. *See Brown v. Ameritech Corp.*, 128 F.3d 605, 608 (7th Cir. 1997).

Episcopo has tried to create an issue of material fact with respect to his coworker Monczynski's behavior. First, Episcopo attempts to impute Monczynski's behavior to Hanley, arguing that the former was the latter's agent on the toolroom floor. But Episcopo has presented no evidence to support this theory, and his efforts to do so in his response brief are unavailing because he is attempting to introduce new facts outside of the parameters established by LR 56.1. (Response at 7-8, 10.) *See also Murray v. Chicago Transit Authority*, 252 F.3d 880, 888 (7th Cir. 2001) (in discussing failure of plaintiff to tie actions of one executive to plaintiff's supervisor, court stated it "has typically been skeptical of . . . elaborate plot theories") (internal quotation omitted).

Second, Episcopo has not provided any evidence indicating that GM would be responsible for Monczynski's behavior. GM would be liable for Monczynski's conduct only if GM was

"negligent either in discovering or remedying the harassment." *Hall*, 276 F.3d at 356. Because "Title VII neither requires nor expects the management of a company to be aware of every impropriety committed by every low-level employee . . . . notice or knowledge of the harassment is a prerequisite for liability." *Id.* (internal quotations and citation omitted). Episcopo must present evidence that he gave GM enough information to make a reasonable employer think there was some probability that he was being harassed. *Id.* He has failed to do this.

Episcopo has not shown that GM knew about Monczynski's conduct. Hanley denied hearing Monczynski ever call Episcopo "wop" or "dago," and Episcopo has offered nothing to suggest otherwise except an unsupported denial. (Pl.'s LR 56.1(b)(3)(A) ¶ 71 Response.) Episcopo does not claim that he reported these episodes of harassment to Hanley.[14] In addition, the number of times Monczynski used these names (between thirty and fifty times over approximately six years, four of which are outside of the limitations period), does not support a finding of a hostile work environment. *See Baskerville*, 50 F.3d at 430-31. Hanley never saw the swastika on Monczynski's toolbox and he did not know about the incident with the car. Episcopo told Hanley about the Columbus Day comment, but Episcopo has not offered any evidence indicating he reported other incidents to Hanley. *See, e.g., North v. Madison Area Ass'n for Retarded Citizens-Dev. Ctrs. Corp.*, 844 F.2d 401, 409 (7th Cir. 1988) (isolated incidents do not create hostile work environment). Episcopo did not file a grievance regarding Monczynski's behavior and so it cannot be said that

---

[14] Hanley's deposition testimony, cited by Episcopo, indicates that Episcopo told Hanley about the Columbus Day comment only. (Hanley Dep. at 30-31.)

Episcopo notified GM of the harassment. *See Hall*, 276 F.3d at 356 (it would be expected for plaintiff to use the channels established by employer to report harassment).

Moreover, the numerous examples of unprofessional behavior (the sunflower seeds, kicking the chair out of the aisle, fixing eyeglasses using the middle finger), while childish, do not, by themselves, suggest that Monczynski was motived by animus towards Episcopo's national origin. *See Shifman v. U.S. Robotics Access Corp.*, 1997 WL 610449, *12 -13 (N.D. Ill. Sept. 24, 1997) (plaintiff must raise inference that hostile behavior result of animus toward ethnicity when not apparent from behavior itself). Monczynski argued with everyone in the toolroom. The evidence supports a conclusion that Monczynski and Episcopo had a bad working relationship characterized by petty conflicts but not that Monczynski engaged in his behavior because of Episcopo's national origin. *Cf. Johnson v. Hondo, Inc.*, 940 F. Supp. 1403 (E.D. Wisc. 1996) (no evidence that abuse based on gender, stating "personality conflicts between employees are not the business of the federal courts") (quoting *Vore v. Indiana Bell Telephone Co.*, 32 F.3d 1161, 1162 (7th Cir. 1994)).

Even if Hanley's yelling or Monczynski's actions were frequent and severe and directed at Episcopo because of his national origin, there is no evidence that Episcopo's well-being or ability to perform his work suffered as a result of this environment. *See Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 674 (7th Cir. 1993) (the objective and subjective standards allow courts to consider conduct's effect on a *reasonable* person's ability to perform work and well-being as well as *actual* effect on plaintiff bringing claim) (emphasis in original). Episcopo provides no evidence that his emotional or psychological stability was affected by his work environment or that he experienced a decline in job performance as a result of his work environment. In fact, Episcopo

-22-

himself participated in some offensive behavior at work, such as using the terms "wop" and "dago" and telling "Polak jokes," indicating that Episcopo was not intimidated by the atmosphere. Episcopo and Monczynski antagonized each other. (Robertson Dep. at 27-30.) In addition, Episcopo was able to assert himself with Hanley, yelling back at him. Episcopo's work environment involved coarse banter and unrefined behavior among all employees; the evidence does not suggest that Episcopo perceived it as hostile. *See Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 463 (7th Cir. 2002) (discussing that alleged harassment cannot be viewed in a vacuum and that "Title VII does not prohibit all verbal or physical harassment in the workplace"). Because we have found that Episcopo has failed to demonstrate a genuine issue of material fact regarding a hostile work environment, our inquiry into GM's liability ends.

GM has also satisfied the requirements of the *Ellerth/Faragher* affirmative defense articulated by the Supreme Court.[15] An employer may avoid vicarious liability if it can show: (a) that it exercised reasonable care to prevent and correct promptly any harassing behavior; and (b) that the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer. *Johnson v. West*, 218 F.3d 725, 730 (7th Cir. 2000) (internal quotation marks and citation omitted). GM has a policy in place to address allegations of harassment, Episcopo knew of these policies and in fact used them in 1977. However, Episcopo did not file any grievance relating to Hanley's or Monczynski's actions and did not share the nature of the problems

---

[15] This defense stems from two Supreme Court cases, *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

with Blackwell, Sidebottom, Miller or Penkala.[16]   Regardless, GM took measures to address Monczynski's and Episcopo's behavior towards one another, even though Episcopo did not formally complain about Monczynski.  Their working relationship eventually improved.

## B. Claim For Disparate Treatment Based on National Origin

Episcopo also claims that GM subjected him to disparate treatment based on his national origin.  He has no direct evidence of discriminatory intent and so must make his case under the burden-shifting analysis outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

The *McDonnell Douglas* analysis requires that Episcopo first demonstrate that he has a *prima facie* case of discriminatory treatment.  He must show that: (1) he is a member of a protected class; (2) he was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) similarly situated persons not in the protected class were treated more favorably.  *See Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 742-43 (7th Cir. 1999).  If he succeeds, the burden of production shifts to GM to offer a legitimate, non-discriminatory reason for the adverse action.  If GM carries its burden, the burden then shifts back to plaintiff to show the proffered reasons for the adverse action are merely pretext.  *See Von Zuckerstein v. Argonne Nat'l Lab.*, 984 F.2d 1467, 1472 (7th Cir. 1993).  The ultimate burden to prove discrimination always remains with

---

[16] Episcopo asserts that GM did not enforce its discrimination policies.  In support, he attempts to introduce evidence outside of the LR 56.1 framework.  These attempts are ineffective.

Episcopo. *See Sattar v. Motorola*, 138 F.3d 1164, 1169 (7th Cir. 1998). Episcopo has failed to meet his burden with respect to the latter two requirements.

There is no evidence that Episcopo suffered any adverse employment action. "An adverse employment action is a materially adverse change in the terms and conditions of employment [that is] more disruptive than a mere inconvenience or an alteration of job responsibilities." *Stockett v. Muncie Indiana Transit Sys.*, 221 F.3d 997, 1001 (7th Cir. 2000). Episcopo seems to be arguing that his work environment was so unbearable that he was constructively discharged.[17] (Response at 12.) This "unbearable work environment" consisted of the failure to honor medical restrictions, assigning jobs designed to aggravate shoulder condition, daily antagonism and encouraging or permitting coworkers to physically assault and verbally taunt him. However, we found above that Episcopo has not shown that a reasonable trier of fact could find that his work environment was so hellish or that is was made unbearable by his supervisor and co-worker because of his national origin.

In *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 735 (7th Cir. 2001), a case cited by Episcopo in support of his position where a claim of constructive discharge did not succeed, the actions complained of by the plaintiff were not so different from the actions that Episcopo says led to his constructive discharge. In *Stockett*, another case cited by Episcopo, the court said that "conditions of employment that are designed to harass and humiliate employees" are actionable adverse

---

[17] Episcopo asserts that Hanley "blocked [his] sickness benefits until after he retired" and was forced to draw down his retirement when his sick pay ran out. (Response at 13; Pl's LR 56.1(b)(3)(B) ¶ 13.) This allegation is unsupported. Furthermore, Episcopo has not filed an EEOC charge alleging any kind of discharge. Generally, a plaintiff cannot bring claims under Title VII that were not included in his EEOC charge. *Cheek v. Western & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). This rule serves a dual purpose: affording an opportunity to settle the dispute through conciliation and giving the employer some warning of the conduct at issue. *Id.* The action Episcopo complains of here occurred after he received his right to sue letter. Moreover, Episcopo's complaint does not contemplate this allegation and we will not allow Episcopo to amend his complaint through a brief submitted in response to a motion for summary judgment. *See Vela v. Village of Sauk Village*, 1999 WL 558125, at *10 (N.D. Ill. July 26, 1999).

employment actions. *Stockett*, 221 F.3d at 1001. But, contrary to Episcopo's position, he has not shown that he was subjected to such conditions. *See E.E.O.C. v. University of Chicago Hosps.*, 276 F.3d 326, 331-32 (7th Cir. 2002) (where employee alleges he was forced to resign because of discriminatory harassment, employee must demonstrate environment more egregious than that required to prove hostile work environment).

Episcopo also attempts to argue that the adverse employment action is Hanley's failure to honor his medical restrictions.[18] First, GM and Hanley did accommodate Episcopo's physical limitations, even when no Notice of Restriction was in effect. When the March and April 2000 Notices of Restriction were in place, GM either used the ADAPT process to find appropriate work for Episcopo or found that nothing was available. Episcopo does not tell us how he was disadvantaged by Hanley's inability to find work appropriate under the April 2000 Notice of Restriction. Moreover, Episcopo did not pursue the grievance he filed. Second, even when there was no Notice of Restriction in place, Episcopo was relieved of any assignment he felt was beyond his limitation or was helped by others on the floor. He was not disciplined or otherwise punished for refusing to perform an assigned task. Third, even if Hanley failed to respect Episcopo's physical limitations, there is no evidence to support a finding that Hanley did so because of Episcopo's national origin.

Moreover, Episcopo has not shown that similarly situated employees, not of Italian heritage, were treated differently. A similarly situated employee is one who is "directly comparable in all

---

[18] To the extent Episcopo is raising a Title VII claim alleging some kind of disability discrimination, this claim fails because Title VII only addresses discrimination based on race, color, religion, sex and national origin. 42 U.S.C. § 2000e-2 (2003).

material respects." *Peele v. Country Mutual Ins. Co.*, 288 F.3d 319, 330 (7th Cir. 2002) (citing

*Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002)). He must be similarly

situated "with respect to performance, qualifications, and conduct." *Radue v. Kimberly-Clark Corp.*,

219 F.3d 612, 617-18 (7th Cir. 2000). This usually demands a showing that "the two employees

dealt with the same supervisor, were subject to the same standards, and had engaged in similar

conduct without such differentiating or mitigating circumstances as would distinguish their conduct

or the employer's treatment of them." *Id.* The cases, however, need not be identical. *See Graham

v. Long Island RR.*, 230 F.3d 34, 40 (2d Cir. 2000).

In his response brief, Episcopo attempts to identify similarly situated individuals whose

medical restrictions were respected by Hanley. (Response at 9.) But Episcopo has introduced this

evidence outside of the framework established by LR 56.1. Consequently, we do not consider

whether these individuals are in fact similarly situated.[19] Episcopo's assertion that Hanley spoke

more harshly to non-white Americans is too vague to carry any weight. Episcopo has failed to

support a disparate treatment claim.

## C. Claim For Retaliation

Title VII prohibits an employer from retaliating against an employee for engaging in an act

protected by that statute. 42 U.S.C. § 2000e-3(a) (2003). A *prima facie* case of retaliation under

Title VII requires the plaintiff to present sufficient evidence that: (1) he engaged in statutorily

---

[19] We note that Episcopo cannot simply refer the Court to deposition testimony. We require a more focused comparison: "specific evidence and specific examples of employees who have been treated more favorably." *Dority v. City of Chicago*, 2001 WL 115528, at *14 (N.D. Ill. Sept. 28, 2001).

protected activity; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected expression and the adverse action. *Adusumilli,* 164 F.3d at 362.

Episcopo seems to be arguing that the adverse employment action was the December 11, 2000 assignment to work on the gray planer after Episcopo reported harassment to Roy Moroni of the labor relations department. There are few problems with this argument. First, Episcopo's reporting of harassment to Moroni has not been introduced via LR 56.1. Episcopo's attempts to present this information through his response brief are ineffective. Second, deposition testimony cited previously relating to Episcopo's reporting of harassment does not indicate that Episcopo ever talked to Moroni. (Episcopo Dep. at 36-38.) (We did not hunt through the entire record for evidence of a conversation with Moroni.) Third, Episcopo asserts that Hanley admitted that he assigned Episcopo to work on this machine "because [Episcopo] took it upon himself to go to Roy Moroni of labor relations." (Response at 14.) In making this assertion, Episcopo mischaracterizes Hanley's deposition testimony. Hanley's testimony indicates that Episcopo wanted to work on the machine, that Episcopo expressed this to Moroni and that it was for that reason that Hanley assigned Episcopo to that machine. Finally, Episcopo has not shown that working on the gray planer (and, for that matter, working on the jig mill and jig bore) were more than "a mere inconvenience or an alteration in job responsibilities." *Conley v. Village of Bedford Park,* 215 F.3d 703, 712 (7th Cir. 2000). In fact, the assignments appear to be within the range of Episcopo's normal work activities. *Id.* Moreover, when Episcopo asked not to work on those machines on certain occasions, GM honored his request. Episcopo has not shown that he suffered any adverse employment action and cannot maintain his Title VII retaliation claim. *See Rhodes v. Illinois Dep't of Transp.,* 243 F. Supp. 2d 810,

818-819 (N.D. Ill. 2003) (assignment of undesirable duties not adverse employment action especially when within job description), *aff'd*, 2004 WL 350996 (Feb. 26, 2004).

Even if assignments to work on the gray planer, jig bore and jig mill machines were adverse employment actions, GM has come forward with a legitimate business reason for making those assignments. *See Collins v. Illinois*, 830 F.2d 692, 702 (7th Cir. 1987) (applying *McDonnell-Douglas* burden shifting analysis to retaliation claim). Hanley assigned these tasks to Episcopo because he had no medical restrictions in place at the time, the tasks were within the range of normal job duties and Episcopo could rely on other employees for help when necessary. Episcopo may survive summary judgment only by presenting sufficient evidence that GM's justification is pretextual, which he has not done. *Id.*

### Conclusion

For the reasons stated above, Episcopo's motion to strike is granted. GM's motion for summary judgment on all claims is granted. There is no genuine issue of material fact on Episcopo's claims against GM under 42 U.S.C. § 1981, Title VII and the ADA. This is a final and appealable order.

**ENTER:**

_____
**UNITED STATES DISTRICT JUDGE**
**PAUL E. PLUNKETT**

DATED: ____**MAR 2 6 2004**____

-29-